No. 3–09–0095
Opinion filed March 7, 2011

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| *In re* S.B., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No.  06–JD–232 |
| | ) | |
| v. | ) | |
| | ) | |
| S.B., | ) | Honorable |
| | ) | Chris L. Fredericksen, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

The respondent, S.B., was the subject of a juvenile petition alleging that he committed aggravated criminal sexual assault (720 ILCS 5/12–14(b)(i) (West 2004)) and aggravated criminal sexual abuse (720 ILCS 5/12–16(c)(2)(i) (West 2004)).  The circuit court found the respondent was not fit to stand trial.  After a discharge hearing, the court dismissed the first count and found the respondent "not not guilty" on the second count.  The court subsequently entered an order requiring the respondent to register as a sex offender.  On appeal, the respondent argues, *inter*

*alia*, that the registration requirements of the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 *et seq.* (West 2008)) do not apply to him because he was never adjudicated delinquent. We reverse.

FACTS

The juvenile petition filed in this case alleged that the respondent, born June 5, 1991, was delinquent based on an incident that occurred between June 1 and August 1, 2005. Count I alleged that the respondent committed aggravated criminal sexual assault (720 ILCS 5/12–14(b)(i) (West 2004)) in that he committed an act of sexual penetration with a victim under nine years of age by placing his finger inside her vagina. Count II alleged that the respondent committed aggravated criminal sexual abuse (720 ILCS 5/12–16(c)(2)(i) (West 2004)) in that he touched the victim's vagina with his hand. Eventually, the court found that the respondent was not fit to stand trial and that it was not substantially probable he would attain fitness within one year.

On August 28, 2007, the circuit court conducted a discharge hearing pursuant to section 104–25 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104–25 (West 2008)). At the close of the hearing, the court found the evidence insufficient to prove the respondent committed aggravated criminal sexual assault but sufficient to prove the respondent committed aggravated criminal sexual abuse. Accordingly, the court dismissed the aggravated criminal sexual assault count and found the respondent "not not guilty" of aggravated criminal sexual abuse.

On December 31, 2009, the State filed a motion to compel the respondent to register as a sex offender pursuant to section 2(A)(1)(d) of the Registration Act (730 ILCS 150/2(A)(1)(d) (West 2008). After a hearing, the circuit court granted the State's motion and ordered the

2

respondent to register as a sex offender. The respondent appealed.

ANALYSIS

On appeal, the respondent argues that the circuit court erred when it required him to register as a sex offender. The respondent contends, *inter alia*, that juveniles qualify as sex offenders under the Registration Act only if they have been adjudicated delinquent, as provided by section 2(A)(5). 730 ILCS 150/2(A)(5) (West 2008). This argument presents a question of statutory construction, which we review *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000).

"The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the legislature's intent." *People v. Hanna*, 207 Ill. 2d 486, 497 (2003). The best indicator of the legislature's intent is the plain language of the statute itself. *Hanna*, 207 Ill. 2d at 497-98. In giving effect to the legislature's intent through the plain language of a statute, we presume that the legislature did not intend absurd, inconvenient, or unjust results. *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008); *Hanna*, 207 Ill. 2d at 498 (citing *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459-60 (1892)). "Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it." *Christopherson*, 231 Ill. 2d at 454.

Initially, we recognize that proceedings under the Juvenile Court Act of 1987 (705 ILCS 405/5–101 to 915 (West 2008)) differ from adult criminal proceedings. While proceedings brought under the Juvenile Court Act are not criminal in nature, certain procedures from the adult criminal system can apply. See generally *People v. Taylor*, 221 Ill. 2d 157, 166-67 (2006). Section 5–101(3) of the Juvenile Court Act specifically provides that, "[i]n all procedures under

3

this Article, minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." 705 ILCS 405/5–101(3) (West 2008). With this enhanced protection principle in mind, we now address the merits of the respondent's argument.

In relevant part, section 2 of the Registration Act provides:

"(A) As used in this Article, 'sex offender' means any person who is:

(1) charged pursuant to Illinois law *** with a sex offense set forth in subsection (B) of this Section or the attempt to commit an included sex offense, and:

* * *

(d) is the subject of a finding not resulting in an acquittal at a hearing conducted pursuant to Section 104–25(a) of the Code of Criminal Procedure of 1963 for the alleged commission or attempted commission of such offense; or

* * *

(5) adjudicated a juvenile delinquent as the result of committing or attempting to commit an act which, if committed by an adult, would constitute any of the offenses specified in item (B), (C), or (C-5) of this Section ***.

***

For purposes of this Section, 'convicted' shall have the same meaning as 'adjudicated.' " 730 ILCS 150/2(A)(1)(d), (A)(5) (West 2008).

4

The plain language of section 2 of the Registration Act indicates that the legislature intended to limit the circumstances under which a juvenile could qualify as a sex offender. The only reference to juveniles in section 2 is in subsection (A)(5). Section 2(A)(5) thus offers enhanced protection for juveniles in that only juveniles who have been adjudicated delinquent for specified offenses fit section 2's definition of "sex offender." See 705 ILCS 405/5–101(3) (West 2008).

In addition to section 2(A)(5), the legislature's intent to treat juveniles differently than adults in the Registration Act appears in section 3–5, entitled, "Application of Act to adjudicated juvenile delinquents." 730 ILCS 150/3–5 (West 2008). In relevant part, section 3–5 provides:

"(a) In all cases involving an adjudicated juvenile delinquent who meets the definition of a sex offender as set forth in paragraph (5) of subsection (A) of Section 2 of this Act, the court shall order the minor to register as a sex offender.

(b) Once an adjudicated juvenile delinquent is ordered to register as a sex offender, the adjudicated juvenile delinquent shall be subject to the registration requirements set forth in Sections 3, 6, 6-5, 8, 8-5, and 10 for the term of his or her registration.

(c) For a minor adjudicated delinquent for an offense which, if charged as an adult, would be a felony, no less than 5 years after registration ordered pursuant to subsection (a) of this Section, the minor may petition for the termination of the term of registration. For a minor adjudicated delinquent for an offense which, if charged as an adult, would be a misdemeanor, no less than 2 years after registration ordered pursuant to subsection (a) of this Section, the minor may petition for termination of the term of registration.

(d) The court may upon a hearing on the petition for termination of registration, terminate registration if the court finds that the registrant poses no risk to the community by a preponderance of the evidence based upon the factors set forth in subsection (e)." 730 ILCS 150/3–5 (West 2008).

Of paramount importance in this section is the procedure by which juveniles can petition the circuit court to terminate his or her sex offender registration. 730 ILCS 150/3–5(c) (West 2008). The Registration Act does not provide adults with the ability to petition the court to terminate sex offender registration. The clear import of section 3–5 is to afford juveniles enhanced protection under the Registration Act. See 705 ILCS 405/5–101(3) (West 2008).

In light of these enhanced protections, the State's argument that the respondent qualifies as a sex offender under section 2(A)(1)(d) is not consistent with the statutory scheme in the Registration Act as it relates to juveniles. The State's argument ignores the remedial distinction between adults and juveniles contained in the Registration Act, in its entirety, that provides enhanced statutory protection for juveniles.

The respondent's status for the purposes of this case is a juvenile, not an adult. The importance of this distinction cannot be understated. While the State could have sought transfer of the case to the adult criminal system (see 705 ILCS 405/5–805(3) (West 2004) (allowing discretionary transfer of certain juvenile cases to adult criminal court if the minor is 13 years of age or older)), it chose not to do so. The case remained in the juvenile system and the respondent therefore retained his status as a juvenile. The State may not apply adult criminal system procedures to an individual with juvenile status under the Registration Act if doing so violates provisions intended to offer enhanced protection for juveniles. 705 ILCS 405/5–101(3) (West

6

2008).

Our conclusion finds further support in the absurd and unjust results that arise if an individual with juvenile status is treated as an adult under the State's literal reading of section 2(A)(1)(d). In this case, the result is a nondelinquent juvenile having fewer rights than a juvenile who was actually adjudicated delinquent in that the former has no ability to petition the circuit court to have his sex offender registration terminated pursuant to section 3–5(c). 730 ILCS 150/3–5(c) (West 2008). Similarly, a situation could arise, for example, in which a 16-year-old who engaged in consensual sexual contact with a 15-year-old could be accused of criminal sexual abuse (720 ILCS 5/12–15(b) (West 2008)) in a juvenile petition, found not fit to stand trial, found "not not guilty" in a discharge hearing, required to register as a sex offender under section 2(A)(1)(d), and left with no ability to petition the court to terminate sex offender registration. This result, as well as the result in this case, does not comport with the enhanced protection principle contained in section 5–101(3) of the Juvenile Court Act. 705 ILCS 405/5–101(3) (West 2008). Accordingly, under the circumstances as uniquely presented in this case, we hold that the court erred when it ordered the respondent to register as a sex offender.

Our resolution of the statutory interpretation issue obviates the need to address the respondent's remaining arguments on appeal.

For the foregoing reasons, we reverse the judgment of the circuit court of Peoria County that required the respondent to register as a sex offender.

Reversed.

JUSTICE SCHMIDT, dissenting:

The trial court, noting that it had already found respondent unfit for trial and that no

7

probability existed that respondent would become fit within one year, proceeded to a discharge hearing pursuant to section 104-25 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104-25 (West 2008)). At that hearing, the court entered a judgment of acquittal pursuant to section 104-25(b) (725 ILCS 5/104-25(b) (West 2008)) on behalf of respondent for the offense of aggravated criminal sexual assault but did not acquit respondent of the aggravated criminal sexual abuse charge.

Section 2(A)(1)(d) of the Registration Act clearly indicates that one qualifies as a sex offender if he: (1) is charged pursuant to Illinois law; (2) with a sex offense; and (3) is subject to a finding not resulting in an acquittal pursuant to section 104-25(a) of the Code. 730 ILCS 150/2(A)(1)(d) (West 2008). S.B. meets all the requirements of a sex offender as defined by that section.

The majority concludes that the legislature only intended for juveniles adjudicated delinquent to register pursuant to the Registration Act. This interpretation, by necessity, means that the legislature specifically intended to exclude juveniles similarly situated as respondent from registering as sex offenders, that is, juveniles charged with a sex offense, who have been found unfit for trial but against whom proof beyond a reasonable doubt exists to support the State's contention that the juvenile committed the offense. A trial court cannot enter "a finding not resulting in an acquittal" under section 104-25 of the Code unless the evidence presented proves respondent guilty beyond a reasonable doubt. 725 ILCS 5/105-24(b) (West 2008).

The majority relies heavily upon the fact that section 3-5(c) of the Registration Act allows some juveniles who have been adjudicated delinquent to petition for early termination of sex offender registration. 730 ILCS 150/3-5(c) (West 2008). One could reasonably question the

8

wisdom of the scheme chosen by the legislature, which allows juveniles adjudicated delinquent to petition to reduce the term for which they must register while not providing the same mechanism to juveniles that are unfit for trial but subject to a finding not resulting in an acquittal. However, one cannot say that this scheme points to the inescapable conclusion that the legislature did not intend for juveniles such as respondent to register under the Registration Act. A juvenile adjudicated delinquent has no right to a shorter term of registration; section 3-5 simply allows him to petition to reduce the term.

I also reject respondent's argument that his discharge hearing was not an actual discharge hearing under section 104-25 of the Code. 725 ILCS 5/104-25 (West 2008). S.B. asserts that since a juvenile proceeding is not criminal in nature and section 104-25 is found in the Code, he "was not a 'defendant' as referred to in section 104-25." The Juvenile Court Act states that, "In all procedures under this Article, minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors. Minors shall not have the right to a jury trial unless specifically provided by this Article." 705 ILCS 405/5-101(3) (West 2008). A section 104-25 discharge hearing is a procedural right afforded adults. 725 ILCS 5/104-25 (West 2008). As such, it is incorporated into the Juvenile Court Act by section 5-101(3) and the discharge hearing in this matter took place in accordance with section 104-25 of the Code.

Respondent further argues that section 2(A)(1)(d) cannot apply to him as it only applies to those "charged pursuant to Illinois law" of committing a sex crime. 730 ILCS 150/2(A)(1) (West 2008). He claims he was never "charged" with a crime as he was named in a juvenile petition and not a complaint, information or indictment under the Code. I disagree. The petition alleged, *inter*

9

*alia*, that respondent was delinquent on the basis of committing the act of aggravated criminal sexual assault and aggravated criminal sexual abuse. Undoubtedly, there are differences between a petition alleging delinquency and an information or indictment. See *In re J.A.J.*, 243 Ill. App. 3d 808, 810 (1993) (citing *In re S.R.H.*, 96 Ill. 2d 138 (1983) ("While the allegations of a petition for wardship need not meet the standards of a criminal charging instrument, the petition must apprise the accused of the precise offense charged with sufficient specificity to prepare his defense.")).

The Juvenile Court Act sets forth the manner in which juveniles are accused of committing offenses. 705 ILCS 405/5-120 (West 2008). Section 5-120 of the Juvenile Court Act notes that proceedings "may be instituted under the provisions of this Article concerning any minor who *** has violated or attempted to violate, regardless of where the act occurred, any federal or State law or municipal or county ordinance." 705 ILCS 405/5-120 (West 2008). While these proceedings may be initiated by filing a petition instead of an indictment or information, our supreme court has routinely referred to respondents in such proceedings as having been "charged" with offenses. See *People ex rel. Davis v. Vazquez*, 92 Ill. 2d 132, 137 (1982) ("The petition charged Michael, then 15½ years old, with two counts of murder in the shooting deaths of Vincent and Gregory Jackson on January 26, 1981."); *In re A.G.*, 195 Ill. 2d 313, 314 (2001) ("On February 2, 1999, the State filed a delinquency petition against the 16-year-old respondent, charging him with two counts of residential burglary (720 ILCS 5/19-3 (West 1998)), one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1998)), and one count of theft (720 ILCS 5/16-1(a)(1)(A) (West 1998))."); *People ex rel. Hanrahan v. Felt*, 48 Ill. 2d 171, 172 (1971) ("two delinquency petitions were filed in the circuit court of Cook County in the interest of

Donald Vance, a minor, age 14, which charged him with the offense of armed robbery and rape"). Respondent herein was alleged to have committed these crimes in the manner proscribed by Illinois law in which juveniles are "charged" with offenses. See 705 ILCS 405/5-520 (West 2008). I find no support for the assertion that section 2(A)(1)(d) of the Act cannot apply to respondent as he was never "charged pursuant to Illinois law."

Respondent falls within the definition of a sex offender as found in section 2(A)(1)(d) of the Registration Act and, therefore, is subject to the Registration Act's registration requirements. Because I disagree with the majority's conclusion, I must address respondent's additional arguments.

### A. Equal Protection

Respondent alleges that an interpretation of section 2(A)(1)(d) of the Registration Act finding it applies to juveniles violates principles of equal protection. He claims such an interpretation impermissibly creates two classes of juvenile offenders: one that can petition to be removed from the sex offender registry after either 2 or 5 years, and another that must remain on the registry the entire 10 years. This impermissibly violates notions of equal protection, respondent claims, by affording the first class of offenders more "rights," even though they have been adjudicated delinquent following a full hearing in accordance with all the protections provided in the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2008)), than the second class of offenders, who have been "found guilty" of nothing.

The State posits that respondent's interpretation of the statutes "would unequivocally be a violation of the equal protection rights of the adjudicated delinquent juvenile, because, while both situations involve juvenile sex offenders, respondent's argument treats them differently" where the

11

State's interpretation treats them the same by requiring both to register. The State continues that while one group, the adjudicated delinquent group, *may* be allowed to reduce its term of registration, there is no guarantee in the statute that the term will be reduced. The ability to petition for a reduced term after two or five years, the State claims, is insufficient to create an equal protection violation. However, the State continues, the mandate suggested by respondent that one group register and another need not register is enough to create such a violation.

An issue concerning the constitutionality of a statute presents questions of law, which we review *de novo*. *In re D.W.*, 214 Ill. 2d 289 (2005).

> "When confronted with a claim that a statute violates con-
> stitutional guarantees of due process or equal protection, a court
> must first determine the nature of the right purportedly infringed by
> the statute. [Citations.] Classification of the right affected is critical
> because the nature of the right dictates the level of scrutiny courts
> employ in determining whether the statute in question passes con-
> stitutional muster. Unless a fundamental constitutional right is
> implicated, the rational basis test applies, and the statute will be
> upheld so long as it bears a rational relationship to a legitimate state
> interest." *In re D.W.*, 214 Ill. 2d at 310.

The right implicated in the instant case involves an individual's right to be free from having to register as a sex offender pursuant to an order entered under section 2(A)(1)(d) of the Registration Act. 730 ILCS 150/2(A)(1)(d) (West 2008). Our supreme court has determined that the registration requirements of the Registration Act do not infringe on "fundamental" rights

and are therefore subject to the rational basis test. *In re J.W.*, 204 Ill. 2d 50 (2003). As such, the Registration Act's registration requirement will be upheld so long as it bears a rational relationship to a legitimate state interest. *J.W.*, 204 Ill. 2d at 67 (quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991).

In *People v. Adams*, 144 Ill. 2d 381 (1991), our supreme court noted that an earlier version of the Registration Act was passed "in response to concern over the proliferation of sex offenses against children" and was designed to aid law enforcement agencies by requiring sex offenders to register with local law enforcement authorities. *Adams*, 144 Ill. 2d at 386. The intent of the legislature when enacting the Registration Act was "to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse." *Adams*, 144 Ill. 2d at 387. The *Adams* court held that the public interest to be served by the Registration Act was the assistance of law enforcement in the protection of children and it served that purpose by providing officers ready access to information on known child sex offenders. *Adams*, 144 Ill. 2d at 390. The *Adams* court concluded that there was nothing unreasonable in the statute's method of serving its purpose given the direct relationship between the registration of sex offenders and the protection of children. *Adams*, 144 Ill. 2d at 391. Undoubtedly, the State has a legitimate interest in protecting children. The Registration Act's registration requirements as applied to sex offenders as described in section 2(A)(1)(d), be they adult or juvenile, bears a rational relationship to that interest.

I acknowledge that respondent, unlike a juvenile adjudicated delinquent, would not be able to apply for termination of his registration in five years. See 730 ILCS 152/121 (West 2008); 730 ILCS 150/3-5(c) (West 2008). However, this dichotomy does not violate his equal protection

rights.

> "Equal protection requires the government to deal with individuals who are 'similarly situated' in a similar manner. [Citation.] The equal protection clause is triggered when the law 'lays an unequal hand on those who have committed intrinsically the same quality of offense.' [Citation.] A claim that a statute violates the equal protection clause requires the determination of whether a fundamental right is involved or whether the statute discriminates against a suspect class. [Citation.] If neither factor is involved, the court uses the rational basis test to determine whether the statute irrationally differentiates between persons similarly situated. [Citation.] Under the rational basis test, the statutory classification need only bear a rational relationship to a legitimate state goal. [Citation.] An equal protection challenge governed by the rational basis standard is limited: 'if any statement of facts may be reasonably conceived to justify the enactment, it must be upheld.' [Citation.]"

*People v. Beard*, 366 Ill. App. 3d 197, 205 (2006).

Sex offenders are not a suspect class nor are they faced with the implication of a fundamental right. My best guess is that the failure to include these juveniles in the group who can petition for early termination of the registration requirement is simply a legislative oversight. Regardless of the reason, I find no constitutional infirmity.

Equal protection does not require that all persons be treated equally. *People v. Pembrock,*

62 Ill. 2d 317 (1976). Respondent was found unfit to stand trial. This differentiates him from a juvenile found fit to stand trial and ultimately adjudicated delinquent. His term of registration does not exceed that of an adjudicated juvenile yet, unlike a juvenile that has been adjudicated delinquent, he cannot petition to reduce his term of registration. The majority states this literal reading of the statute creates an "absurd and unjust" result. Slip op. at 6-7.

Let us look at an analogous situation. Under section 104-25, an adult found "not not guilty" can be held for treatment up to the maximum time he could have been incarcerated had he been convicted. However, a person convicted of many offenses would be eligible for day-for-day good-time credit while incarcerated. One who is confined after being found "not not guilty" is not entitled to the good-time credit. See *People v. Rasgaitis*, 222 Ill. App. 3d 855 (1991). If being involuntarily confined for a time period equal to the maximum sentence available had he been convicted, without the opportunity to apply for good-time credit, does not violate equal protection concerns, I fail to see how not being able to apply for early termination of registration would constitute an equal protection violation under the facts before us.

Respondent next alleges the discharge hearing denied him his constitutional right to due process. Respondent's argument has already been rejected by our supreme court. *People v. Waid*, 221 Ill. 2d 464 (2006).

I respectfully dissent.