# Illinois Official Reports

## Appellate Court

---

### *People v. Tate*, 2016 IL App (1st) 140598

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDMOND TATE, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-14-0598 |
| Filed<br>Rehearing denied<br>Supplemental<br>opinion filed | September 14, 2016<br>October 4, 2017<br><br>October 18, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-08270; the Hon. Carol A. Kipperman, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Patrick Cassidy and Scott Main, both of DePaul University Legal Clinic, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, Margaret A. Hillman, and Annette Collins, Assistant State's Attorneys, of counsel), for the People. |

PRESIDING JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

## OPINION

¶ 1  Following a bench trial, defendant Edmond Tate was convicted of aggravated robbery and sentenced to 28 years' imprisonment. On appeal, defendant contends that the trial court erred in denying his pretrial motion for substitution of judge as untimely. We reverse.

¶ 2  We set forth the facts and procedural background of this case to the extent necessary to resolve the issue on appeal. On August 27, 2008, a robbery occurred at a store in Forest Park. An arrest warrant was issued for defendant on April 25, 2011, stating that he was to be brought to the courthouse in Maywood (Fourth Municipal District). Defendant was arrested on May 1, 2011, and on May 2, 2011, he was charged by felony complaint with unlawful restraint and aggravated robbery (case No. 11-4002416-01). On May 3, 2011, the half sheet indicated that Judge Vazquez set bond and defendant demanded a trial. On May 5, 2011, the half sheet indicated that Judge Grossi continued the matter to May 20, 2011. Nothing in the record suggests these appearances occurred anywhere other than the courthouse in Maywood.

¶ 3  On May 20, 2011, defendant appeared with an assistant public defender before Judge Grossi in a courtroom in Maywood.[1] The following colloquy occurred:

> "THE COURT: Edmund [*sic*] Tate.
>
> What's the number on this?
>
> ASSISTANT STATE'S ATTORNEY [(ASA)]: 11 CR 8270, June 9th.
>
> ASSISTANT PUBLIC DEFENDER [(APD)]: What room is it going to?
>
> THE COURT: All right. Mr. Tate, your case was indicted by the grand jury under Case No. 11 CR 8270. Your next court date is in Room 107.
>
> What date?
>
> APD: Shouldn't it be Room 108? Wasn't the last one—
>
> THE COURT: I sent this mess to 105. So there's 20 cases, so I'm skipping 105.
>
> APD: Can it go to 108?
>
> THE CLERK: The last one went to 108.
>
> THE COURT: So this one will go to 107.
>
> APD: Well, he's asking for the 9th.
>
> Motion State to the 9th.
>
> ASA: Correct.
>
> THE COURT: Motion State, June 9th, directly into Room 107."

---

[1]Defendant did not include a transcript from this appearance in the report of proceedings. The transcript was provided to this court in an appendix to the State's brief.

[2]In relevant part, the rules provide that "[a]fter *** indictment by grand jury, all parties shall appear in the courtroom of the Presiding Judge of the Criminal Division for arraignment procedures.

The half-sheet entry for May 20, 2011, contained the notation "SUPER 11 CR 8270 NOLLE M/S 6/9/11 Rm 107." An order entered on the same day stated "MSNP [motion state *nolle prosequi*] SBI [superceded by indictment] 11 CR 8270."

¶ 4   A true bill charging defendant with one count of aggravated robbery and two counts of aggravated kidnapping (case No. 11 CR 8270) was dated and file-stamped on May 25, 2011. However, the indictment return sheet, also file-stamped on May 25, 2011, listed May 19, 2011, as the date for the true bill. The half-sheet entry for May 25, 2011, indicated the indictment had been filed and also contained the notation "Pres. Judge Assignment Date: 6-9-11."

¶ 5   On June 9, 2011, the half sheet indicated that Judge Biebel, the presiding judge of the criminal division of the circuit court of Cook County, assigned the case to the Fourth Municipal District (Maywood). On the same day, defendant appeared with a different public defender before Judge Kipperman in a courtroom in Maywood. The prosecutor stated that defendant needed to be arraigned on case No. 11 CR 8270, but defendant asked for a continuance in order to speak with a private attorney. Judge Kipperman continued the matter to June 17, 2011, but the half-sheet entry memorializing the continuance was crossed out and the record contains no reference to proceedings from that day.

¶ 6   On July 11, 2011, a private attorney, Nathaniel Niesen, appeared for defendant before Judge Kipperman. The following colloquy occurred:

"THE CLERK: Tate.

THE COURT: When is the earliest you can come back, counsel? We just don't have the time today.

DEFENSE COUNSEL: I understand. The issue will have to be resolved. The earliest I can come back realistically is the 18th, unless you want me to come back in the afternoon on the 13th.

* * *

ASA: By agreement 7/18.

THE COURT: So it will be by agreement 7/18. Locate file. That's all I can do.

DEFENSE COUNSEL: Absolutely. I understand, [Y]our [H]onor."

¶ 7   On July 18, 2011, the court held a hearing on defendant's motion for substitution of judge, where defendant was represented by a private attorney, Steven Richards. At the hearing, the following colloquy occurred:

"THE COURT: Now what date was the SOJ filed?

DEFENSE COUNSEL: The SOJ was filed, [Y]our [H]onor, June 17th. There is an entry that I saw on the electronic docket that it was assigned to your call or assigned to suburban on June 9th.

I think the date of June 9th was mentioned the last time as well so I think we are—I think the true date it was assigned was June 9th, and we are within the ten days.

ASA: The 9th was the date that it was on your call, [Y]our [H]onor. That was the day of arraignment.

The case, from what we understand, it was superceded [*sic*] by indictment on the 19th of May, and on the 20th before Judge Grossi it was assigned to this call.

That was the date the SOJ should have been made because—

THE COURT: It was.

ASA: By the 10-day period being up, it would have been at the end of May or prior to June 9th so the 10-day period had been expired as of the 9th.

THE COURT: All right. A motion for SOJ is denied on the basis of timeliness having been assigned to this courtroom May 20th.

* * *

DEFENSE COUNSEL: Just to make it clear, I don't think I have to preserve the record, but we are objecting to the SOJ being denied so we will reserve that."

¶ 8 The case proceeded to bench trial, where the evidence established that defendant entered the store in Forest Park and claimed he had a gun. He restrained the owner, took her rings, took some money and merchandise, and fled. Defendant's fingerprints were recovered from the store, and the owner identified defendant in a photo lineup, physical lineup, and at trial. The court found defendant guilty of aggravated robbery but acquitted him of aggravated kidnapping. Defendant's motion for new trial was denied, and in view of his criminal record, the court sentenced him to 28 years' imprisonment as a Class X offender.

¶ 9 On appeal, defendant contends the trial court erred in denying his motion for substitution of judge as untimely. Defendant disputes whether he could be charged with notice that his case had been assigned on May 20, 2011, when Judge Grossi merely indicated the room number for defendant's next appearance. He further argues that his case could not have been assigned that day because, per the Rules of the Circuit Court of Cook County, an indictment must be filed before the presiding judge of the criminal division assigns the case to a judge.[2] As defendant was indicted on May 25, 2011, and Judge Biebel assigned the case on June 9, 2011, defendant submits that his motion was timely filed within 10 days, on June 17, 2011. Additionally, defendant argues that he had the right to name two judges in his motion because he was indicted for a Class X felony, namely aggravated kidnapping, but could not have exercised that right had his case been assigned before indictment. Defendant acknowledges that his motion for substitution of judge is not included in the record but contends that if the absence of the motion is dispositive in the present appeal, this court should remand his case to the trial court for a hearing to recreate the record under Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006).

¶ 10 The State responds that defendant failed to establish that he ever filed a motion for substitution of judge or that the motion was legally sufficient. Even if the motion was filed, the State argues it was untimely because Judge Grossi assigned defendant's case to Judge Kipperman on May 20, 2011. As defense counsel was aware of the assignment, knowledge may be imputed to defendant irrespective of whether the assignment occurred in accordance with the normal procedure for assigning cases under the Rules of the Circuit Court of Cook County. The State also argues that defendant had notice of his superseding indictment based on the proceedings from May 20, 2011, and, therefore, could have named two judges in a motion for substitution at that time.

¶ 11 We note that a copy of the motion for substitution of judge is not included in the record on appeal and the half sheet does not indicate when the motion was filed. However, the transcript

---

[2]In relevant part, the rules provide that "[a]fter *** indictment by grand jury, all parties shall appear in the courtroom of the Presiding Judge of the Criminal Division for arraignment procedures. Arraignment shall occur three (3) weeks after *** indictment *** except as ordered by the Presiding Judge of the Criminal Division or except as agreed to by the parties." Cook Co. Cir. Ct. R. 15.1(a) (eff. Sept. 1, 1980).

of the hearing on July 18, 2011, shows that neither the parties nor the court disputed that the motion was filed on June 17, 2011. Accordingly, contrary to the State's contention, whether defendant ever filed a motion for substitution of judge is not at issue on appeal. We now address the merits of the parties' remaining arguments.

¶ 12    As an initial matter, the State alleges that defendant forfeited review of the dismissal of his motion for substitution of judge because he did not file a posttrial motion challenging this issue. *People v. Wade*, 116 Ill. 2d 1, 9 (1987) (posttrial motion required to preserve issue of substitution of judge). Defendant replies that the proceedings following the dismissal of his motion for substitution of judge were void and may be challenged at any time and, alternatively, asks us to consider his claim under the second prong of the plain-error rule. Ill. S. Ct. R. 615(a). Before considering defendant's arguments regarding voidness and plain error, we must first determine whether the trial court erred in denying defendant's motion for substitution of judge. *People v. Eppinger*, 2013 IL 114121, ¶ 19 (absent an error, there can be no plain error and defendant's forfeiture will be honored).

¶ 13    Where, as here, the defendant challenges the construction of a statute, there is a question of law and our standard of review is *de novo. People v. Christopherson*, 231 Ill. 2d 449, 454 (2008). A defendant has the absolute right to a substitution of judge upon the timely filing of a proper written motion for substitution. 725 ILCS 5/114-5(a) (West 2010); *People v. McDuffee*, 187 Ill. 2d 481, 487-88 (1999). An automatic substitution of judge must be granted if the defendant meets the following requirements: (1) the motion is made within 10 days after defendant's case is placed on the judge's trial call, (2) the motion names only one judge unless the defendant is charged with a Class X felony, in which case he may name two judges, (3) the motion must be in writing, and (4) the motion must allege the trial judge is so prejudiced against the defendant that the defendant cannot receive a fair trial. *McDuffee*, 187 Ill. 2d at 487-88. Additionally, the motion must be made before the trial judge makes a substantive ruling in the case. *Id.* at 488. On appeal, defendant challenges only the timeliness of his motion for substitution of judge.

¶ 14    The statutory provisions regarding motions for substitution of judge are construed liberally, but a liberal construction of the statute does not mean that a motion will be considered to have been timely filed in all cases. *People v. Evans*, 209 Ill. 2d 194, 215 (2004); *People v. Burns*, 188 Ill. App. 3d 716, 721 (1989) ("Though it is well established substitution of judge provisions are to be liberally construed, the statute cannot be construed so as to contravene its express provisions."). There is no statute or supreme court rule that requires that the assignment of judges be made in a formal, written fashion. *McDuffee*, 187 Ill. 2d at 489. Rather, a motion for substitution is considered timely filed if it is brought within 10 days of the date the defendant could be charged with knowledge that the judge at issue had been assigned to his case. *Id.* at 490. This examination is case specific and depends upon the record. *Evans*, 209 Ill. 2d at 216.

¶ 15    In the instant case, our first inquiry is to determine the earliest date on which defendant could be charged with knowledge of Judge Kipperman's assignment. The State contends defendant had notice based on the proceedings from May 20, 2011, while defendant argues he cannot be charged with notice before June 9, 2011, when the half sheet indicated that his case had been assigned to the Fourth Municipal District in Maywood. As the period for filing a timely motion for substitution of judge does not depend upon an official assignment date, the half-sheet entry from June 9, 2011, is not dispositive. *McDuffee*, 187 Ill. 2d at 490. Further,

even if the process for assigning defendant's case did not adhere to the normal procedure described in the Rules of the Circuit Court of Cook County, we nonetheless must determine whether defendant could be charged with notice of the assignment based on the proceedings that actually occurred. Cook Co. Cir. Ct. R. 15.1(a) (eff. Sept. 1, 1980) ("After *** indictment by grand jury, all parties shall appear in the courtroom of the Presiding Judge of the Criminal Division for arraignment procedures. Arraignment shall occur three (3) weeks after *** indictment *** except as ordered by the Presiding Judge of the Criminal Division or except as agreed to by the parties."). Therefore, we begin our analysis with defendant's appearance on May 20, 2011, the first transcribed proceeding in the record on appeal.

¶ 16    On May 20, 2011, defendant appeared with an assistant public defender before Judge Grossi, who told defendant that his case "was indicted by the grand jury under Case No. 11 CR 8270" and that the "next court date is in Room 107." The following colloquy then occurred:

> "APD: Shouldn't it be Room 108? Wasn't the last one—
>
> THE COURT: I sent this mess to 105. So there's 20 cases, so I'm skipping 105.
>
> APD: Can it go to 108?
>
> THE CLERK: The last one went to 108.
>
> THE COURT: So this one will go to 107."

We cannot say defendant had notice that Judge Kipperman had been assigned to his case based on this exchange, where the court mentioned the number of the courtroom for defendant's next appearance but not the name of the judge who presided there. Moreover, although the State asks us to infer the public defender objected based on personal knowledge that Judge Kipperman presided in Room 107, we do not believe the record mandates this inference. To the contrary, logic suggests the public defender would have filed a motion for substitution of judge if his objection was based on knowledge that Judge Kipperman sat in Room 107. Here, our inability to charge the assistant public defender with knowledge of Judge Kipperman's assignment precludes us from imputing this knowledge to defendant. *Cf. People v. Saunders*, 135 Ill. App. 3d 594, 600 (1985) (finding notice of assignment where defense counsel mentioned trial judge by name while asking court to confirm schedule for arraignment). In view of the record, we cannot say that defendant could be charged with knowledge that Judge Kipperman was assigned to his case on May 20, 2011. Rather, the earliest date on which defendant could be charged with notice of the assignment was June 9, 2011, when the half-sheet indicated that Judge Biebel assigned the case to the Fourth Municipal District (Maywood). Therefore, defendant's motion for substitution of judge was timely filed on June 17, 2011, and the trial court erred in denying the motion as untimely. 725 ILCS 5/114-5(a) (West 2010) (defendant must file motion for substitution of judge "[w]ithin 10 days after a cause *** has been placed on the trial call of a judge").

¶ 17    Having found that error occurred, we next consider whether the error rendered the judgment of the trial court void or voidable. Relying on *McDuffee*, defendant urges that the erroneous denial of his motion for substitution of judge made all subsequent action taken by the trial court void and subject to challenge at any time. *McDuffee*, 187 Ill. 2d at 492 (improper denial of motion for substitution of judge renders subsequent proceedings void). Citing a line of cases, including *People v. Hughes*, 2012 IL 112817, *In re Luis R.*, 239 Ill. 2d 295 (2010), *In re M.W.*, 232 Ill. 2d 408 (2009), and *People v. Thompson*, 209 Ill. 2d 19 (2004), the State counters that whether a judgment is void or voidable presents a question of jurisdiction. They

then assert that because jurisdiction in this case was proper, any order entered by the circuit court, if erroneous, was merely voidable and not void.

¶ 18    We have no quarrel with the cases cited by the State or with the propositions of law that they espouse. In fact, we would add that during the pendency of this appeal, our supreme court reaffirmed that certain defects in a proceeding, such as the absence of jurisdiction, are determinative of whether a judgment is void or voidable. In *People v. Castleberry*, 2015 IL 116916, the court abolished the void sentence rule, which held that a circuit court that violates a particular statutory requirement when imposing a sentence acts without "inherent power," *i.e.*, without jurisdiction, thereby rendering the sentence void. *Id.* ¶¶ 13, 19. The supreme court reasoned that the "inherent power" idea of jurisdiction is at odds with the grant of jurisdiction given to the circuit courts under the Illinois Constitution. *Id.* ¶ 18. The court explained that the circuit court is a court of general jurisdiction that need not look to statute for its jurisdictional authority. *Id.* ¶ 19. Consequently, the court noted, only the most "fundamental defects, *i.e.*, lack of personal jurisdiction or lack of subject matter jurisdiction," warrant declaring a judgment void. *Id.* ¶ 15.

¶ 19    Historically, courts in Illinois have held that, upon a timely filing of a proper written motion, a defendant has an absolute right to a substitution of judge and reversible error results if erroneously denied. See, *e.g.*, *People v. Smith*, 28 Ill. 2d 445, 447 (1963); *People v. Kostos*, 21 Ill. 2d 451, 454-55 (1961); *People v. Dieckman*, 404 Ill. 161, 164 (1949); *People v. Scott*, 326 Ill. 327, 341 (1927); *People v. Harston*, 23 Ill. App. 3d 279, 281 (1974); *People v. Pace*, 225 Ill. App. 3d 415, 424-26 (1992); *People v. Saltzman*, 342 Ill. App. 3d 929, 932 (2003). In *People v. Walker*, 119 Ill. 2d 465, 470 (1988), Justice William Clark, writing for our supreme court, noted that "[f]or the past 114 years, Illinois law has protected the constitutional right to a fair and impartial trial in criminal cases by providing for the substitution of a judge who is allegedly prejudiced against a defendant." Thus, we believe that the improper denial of a defendant's motion for a substitution of judge ranks among those types of "fundamental defects" most recently contemplated by our supreme court in *Castleberry*.

¶ 20    We reaffirm today that when a motion for substitution of judge is improperly denied, all subsequent action by the trial judge, beyond transfer of the matter, is void. See *People v. Ryan*, 264 Ill. App. 3d 1, 3 (1994); *People v. Brim*, 241 Ill. App. 3d 245 (1993); *People v. Banks*, 213 Ill. App. 3d 205, 213 (1991); *People v. Redisi*, 188 Ill. App. 3d 797, 801 (1989). Accordingly, we agree with defendant's reliance on *McDuffee* and hold that any action taken by the trial court subsequent to the erroneous denial of his motion for substitute judge is rendered null and void and remand this cause for a new trial.

¶ 21    For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.

¶ 22    Reversed and remanded with directions.

¶ 23        SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

¶ 24    Subsequent to the issuance of our opinion in this case, the State timely filed a petition for rehearing. We invited the defendant to file a response, to which the State filed a reply. At the heart of the State's argument in support of rehearing is its interpretation of our supreme court's decision in *People v. Castleberry*, 2015 IL 116916. For the reasons that follow, we deny the State's petition.

¶ 25     With *Castleberry* as the backdrop, the State argues that the erroneous denial of a section 114-5(a) motion, or substitution of judge, does not fit within any of the void judgment categories. They maintain that judgments entered following an erroneously denied section 114-5(a) motion are merely voidable. Accordingly, absent a showing of plain error, claims of entitlement to automatic reversal that have not been preserved in a posttrial motion are forfeited.

¶ 26     The State first posits that *Castleberry* defined void judgments as "only those judgments made without personal or subject matter jurisdiction." The State subsequently acknowledges, however, that in *People v. Thompson*, 2015 IL 118151, ¶ 32, the court noted that "[a] second type of voidness challenge that *** may be raised at any time involves a challenge to a final judgment based on a facially unconstitutional statute that is void *ab initio*." See also *People v. Price*, 2016 IL 118613, ¶ 31 ("This court has recognized only three circumstances in which a judgment will be deemed void: (1) where the judgment was entered by a court that lacked personal or subject-matter jurisdiction, (2) where the judgment was based on a statute that is facially unconstitutional and void *ab initio*, and (3) where a judgment of sentence did not conform to a statutory requirement (the void sentencing rule).").

¶ 27     The State argues that decisions that state that improper denials of section 114-5(a) motions result in "void" judgments are in conflict with *Castleberry* and earlier substitution of judge or, the then, change of venue cases. They maintain that these decisions are highly questionable because, first, *Castleberry* now repudiates the term "void" in this context. Second, "actual historical practice does not support treatment of judgments as 'void' simply because an SOJ motion was improperly denied." Citing *Cantwell v. People*, 138 Ill. 602, 604-05 (1891), the State asserts that none of the early cases, prior to the late 1960s, dealing with the issue of improper denial of substitution of judge or change of venue motions ever used the term "void." Further, none of the earlier courts said that all actions taken by a court after a wrongful denial of a change of venue petition were "null and void." Thus, the State urges our rejection of the term and entreats us to correct that part of our analysis characterizing all judgments following the denial of an improper substitution of judge under section 114-5(a) as "void."

¶ 28     We agree with the State's observations regarding earlier decided cases. A historical review of *Cantwell* and its progeny aid in the correct interpretation of the court's more recent holding in *People v. McDuffee*, 187 Ill. 2d 481 (1999). In early cases addressing the issue, the court stated simply that the right to a change of venue, as the automatic substitution provision was then called, was absolute and that an erroneous denial of the same was reversible error. *People v. Rosenbaum*, 299 Ill. 93, 94 (1921); see *Cantwell*, 138 Ill. at 604, *People v. Cohen*, 268 Ill. 416 (1915), and *People v. McWilliams*, 350 Ill. 628 (1932). In later years, the court's language expanded to include that where a petition for change of venue on account of the prejudice of the judge is in compliance with the act, "*the trial judge loses all power and authority over the case except to make the necessary orders to effectuate the change.*" (Emphasis added.) *People v. Davis*, 10 Ill. 2d 430, 434 (1957) (citing *Rosenbaum*, 299 Ill. at 94, *Cohen*, 268 Ill. 416, and *Cantwell*, 138 Ill. 602). Then, in 1961, the court in *People v. Kostos*, 21 Ill. 2d 451, 455 (1961), tracked the exact language in *Davis*, 10 Ill. 2d 430, and cited also to the court's 1921 opinion in *Rosenbaum*, 299 Ill. 2d 93.

¶ 29     Seventeen years later, in *People v. Walker*, 119 Ill. 2d 465 (1988), the court was asked to determine whether section 114-5(a) violated the separation of powers doctrine. In its analysis, the *Walker* court repeated the pre-1957 courts' refrain, stating without more, that where a

criminal defendant's properly filed motion for substitution of judge is denied, reversible error occurs. *Id.* at 481. Ten years later, the court in *McDuffee*, 187 Ill. 2d at 487-88, relied extensively on the reasoning and holding in *Walker* in finding reversible error for the erroneous denial of the defendant's section 114-5(a) motion. It is in *McDuffee* that the court stated that " '[a] [motion for substitution of judge] is improperly denied, *all subsequent action taken by the trial court is void.*' " (Emphasis added and omitted.) *Id.* at 492 (quoting *People v. Williams*, 217 Ill. App. 3d 791, 793 (1991)). In our majority opinion we track, verbatim, our supreme court's language in *McDuffee*.

¶ 30    Although the language used to define the actions taken by a trial judge who erroneously denies what is currently known as a motion for substitution of judge has evolved, the effect of an improper denial, reversible error, has not. It does appear, however, that the use of the term "void," in the context of *Castleberry*'s void judgment analysis and also in *McDuffee*'s reversible error analysis, has led to confusion regarding the viability of section 114-5(a) claims. We are not, however, without some guidance in avoiding any future confusion.

¶ 31    Indeed, in *People v. Davis*, 156 Ill. 2d 149 (1993), our supreme court cautioned that, when the term "void" is used in a judicial opinion, it is necessary to resort to the context in which the term is used to determine precisely the term's meaning. *Id.* at 155. It goes without saying that jurisdiction is vested in the courts, not in the judges. *People v. Gray*, 363 Ill. App. 3d 897, 900 (2006) (citing *Department of Public Works & Buildings v. Legg*, 374 Ill. 306, 309 (1940)). Clearly a motion for substitution of judge relates to a perceived bias by a judge, not to the court's jurisdiction. Review of prior precedent makes clear that the *McDuffee* court's use of the term "void" is not intended to refer to the court's jurisdiction but instead to actions taken by the trial judge. Such a reading renders the court's 1999 decision in *McDuffee* absolutely reconcilable with its 1988 decision in *Walker*, its 1961 decision in *Kostos*, and its 1957 decision in *Davis*.

¶ 32    By our language in the majority opinion, we intend no deviation from the holding in *McDuffee* and the cases upon which it relied. There, the court stated that "any actions taken by the court subsequent to the [erroneous denial of the defendant's motion for substitution] were null and void." *McDuffee*, 187 Ill. 2d at 492. We understand the *McDuffee* court's use of the phrase "any action taken by the court" to include the judge's act of entering a judgment. We do not, however, understand the court's holding to mean that the trial court was thereby divested of jurisdiction.

¶ 33    The State argues that expanding the category of void judgments to include cases of trial court error in denying a motion for substitution of judge harkens back to the now repudiated inherent authority doctrine rejected in *Castleberry*. In that regard the State cautions that "to the extent the 'null and void' language in substitution of judge case law is tied to the inherent authority doctrine, it should be viewed and applied with extreme caution, if not abandoned altogether."

¶ 34    We disagree. In fact our failure to reverse in such instances would diminish an already existing category of judgments subject to reversible error. Here, we did no more than adhere to long settled principles of law, which provide that the improper denial of a defendant's section 114-5(a) motion for substitution of judge requires reversal. Further, we believe the State reads *Castleberry* too broadly. We reject the notion that the court in *Castleberry*, while in the process of abolishing the void sentencing rule, also did away with our court's inherent authority. As we

read it, *Castleberry* repudiated the inherent authority doctrine only insofar as it was relied upon as a basis for conferring jurisdiction.

¶ 35   This court has noted that the phrase "inherent power" is not synonymous with jurisdiction. See *Miller v. General Telephone Co. of Illinois*, 29 Ill. App. 3d 848, 853 (1975); see also *People v. Heil*, 49 Ill. App. 3d 55, 59 (1977). Although our research has not cited us to a case which expressly defines the phrase, in *People v. Walker*, 232 Ill. 2d 113 (2009), our supreme court noted that courts have inherent authority to guarantee each defendant a fair trial. See also *People v. Lawson*, 67 Ill. 2d 449, 456 (1977). Quoting from its earlier opinion in *People v. Rudi*, 103 Ill. 2d 216, 222 (1984), the court in *Walker* stated that the circuit court's inherent powers enable it to "simultaneously *** protect the legitimate rights of defendants, maintain respect for its calendar, and satisfy the public's interest in the fair and efficient prosecution of those accused of crime." (Internal quotation marks omitted.) *Walker*, 232 Ill. 2d at 129.

¶ 36   We trust that the inherent authority doctrine is alive and well in our jurisprudence. Thus, notwithstanding the State's admonishment, we would not think it too far a stretch to find that the automatic reversal required by the erroneous denial of a properly filed section 114-5(a) motion flows from that very power. "Viewed historically, *** it is clear that [our supreme court] has considered the automatic substitution of judge statute a legitimate and proper means to ensure a fair trial." *Walker*, 119 Ill. 2d at 481. The "void sentencing rule" addressed in *Castleberry* differs from the void orders resulting from the improper denial of a section 114-5(a) motion for substitution of judge. The right to a fair and impartial trial is a constitutional protection that, as our supreme court has held for more than a quarter of a century, is effectuated through the legislative enactment of various iterations of section 114-5(a). See *Walker*, 119 Ill. 2d at 480; see also *People v. Evans*, 209 Ill. 2d 194, 215 (2004). The legislature's enactment of various sentencing ranges for criminal conduct, however, effectuates no protections afforded a defendant pursuant to either our state or federal constitution.

¶ 37   *McDuffee*, like the case at bar, does not fit within the narrow confines of *Castleberry*'s jurisdictional analysis. Noticeably, neither *McDuffee*, nor any of the cases which preceded it, discuss the erroneous denial of a section 114-5(a) motion in the context of jurisdiction. Simply put, *McDuffee* remains the law in Illinois, and we are bound to follow it. *People v. Rosinski*, 351 Ill. App. 3d 459, 461 (2004); see also *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 734 (2006). Thus, we acknowledge that our reliance on *Castleberry*'s fundamental defect concept to support the continued viability of *McDuffee* is misplaced.

¶ 38   Before concluding, we deem it necessary to address the State's argument regarding plain error and forfeiture. As we acknowledged in our majority opinion, defendant failed to present the trial court's denial of his motion in a posttrial motion. Treating the issue in the same manner as if it were the type of void judgment about which *Castleberry* implied, we declined to find the issue forfeited. We continue to do so but for different reasons.

¶ 39   We reject the State's argument that because the defendant failed to raise his claim in a posttrial motion, he must now demonstrate prejudice or structural error. We would remind the State that the defendant's right to substitution of judge under section 114-5(a), unlike the "for

cause" provision in section 114-5(d), is automatic and absolute.[3] The trial court's erroneous denial of the same should not result in a greater burden on defendant, who timely presented his motion and was, in every regard, compliant with statute and controlling case law.

¶ 40    To the extent the State relies on *People v. Evans*, 37 Ill. 2d 27 (1967), to support its prejudice argument, that reliance is misplaced. In *Evans*, the defendant filed a postconviction petition in which he alleged that the trial court erred in denying his motion for change of venue. *Id.* at 30. The petition contained allegations of the facts and circumstances in the defendant's case, supported by his own affidavit that the same were true in substance and in fact. *Id.* at 29. The State moved to dismiss, asserting that the defendant's allegations were conclusory and unsupported by accompanying affidavits, records, or other evidence. *Id.*

¶ 41    On review, the court, citing the substitution of judge statute (Ill. Rev. Stat. 1965, ch. 38, ¶ 114-5), noted that although a person may have a right to a substitution of judge upon mere allegation of bias on the part of the judge, the denial of "this statutory right is not necessarily a violation of constitutional dimension." *Evans*, 37 Ill. 2d at 30. To establish a constitutional violation within the purview of the Post-Conviction Hearing Act, the defendant would have to allege facts that, if true, would show that he was substantially prejudiced by the denial of his motion for substitution of judges. *Id.* In affirming the trial court's dismissal, the court held that the defendant's allegation, alleging only that the trial court erred in denying his motion for change of venue, "contain[ed] insufficient facts to raise a constitutional question within the purview of the Post-Conviction Hearing Act." *Id.* at 31.

¶ 42    Most obviously in *Evans*, the defendant's claimed errors regarding the trial court's denial of his motion for automatic substitution were brought in the context of a postconviction proceeding. The State cites to no case in which a defendant, on direct appeal, is required to support his claim of error in the denial of a motion for automatic substitution, pursuant to section 114-5(a), with evidence of actual prejudice. We note, additionally, that the court in *Evans* cites to section 114-5, generally, without making any distinction as to whether defendant's claim was with respect to the automatic substitution provision (Ill. Rev. Stat. 1965, ch. 38, ¶ 114-5(a)) or to the for cause provision (Ill. Rev. Stat. 1965, ch. 38, ¶ 114-5(c)). Finally, and significantly, *Evans* was decided prior to the court's decision in *Walker*, 119 Ill. 2d at 480-81, in which the court held the statutory provision to be of constitutional dimension. But see *id.* at 484-85 (Miller, J., specially concurring, joined by Simon, J.) (noting his disagreement with the majority's suggestion that the automatic-substitution provision is constitutionally required).

¶ 43    We are mindful that, as a general rule, to preserve a claim for review, a motion for a new trial as well as a claim of error or objection at trial are required. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The purpose for requiring a posttrial motion specifying the alleged errors is to provide the court the opportunity to grant a new trial if warranted and to narrow the appeal to those errors considered significant by trial counsel. *Id.* at 186. Generally, failure to comply with the requirement limits the court's review. *Id.* at 190.

¶ 44    In our view, given that the right to a section 114-5(a) substitution of judge is absolute and automatic reversal is required for its denial, to honor a defendant's procedural default would

---

[3]A substitution for cause petition must be supported by affidavit; the allegations of bias must be specific and not be conclusory in nature and does not have to be filed within 10 days of the trial judge's call. 725 ILCS 5/114-5(d) (West 2000); see also *People v. Jones*, 197 Ill. 2d 346, 354 (2001).

elevate form over substance. Because all actions of the trial court beyond the erroneous denial of the motion for substitution are null and void so then would have been the trial judge's ruling on any timely filed posttrial motion. See *McDuffee*, 187 Ill. 2d at 492; see also *Kostos*, 21 Ill. 2d at 454-55 (other assigned errors held not properly before the court inasmuch as trial judge lost all power and authority over the case except to make necessary orders to effectuate defendant's right to change of venue). More significantly however, in *Enoch*, our supreme court held that constitutional issues that were raised at trial and that may be raised later in a postconviction petition are not subject to waiver. *Enoch*, 122 Ill. 2d at 190.

¶ 45   As we have previously noted, the right to a substitution of judge has been deemed by our supreme court to be of constitutional magnitude. Here, the trial court was presented with defendant's motion for substitution of judge, the State argued in opposition, and the motion was considered by the court and then denied. No different issue is presented here on appeal than was addressed by the trial court. Thus, notwithstanding defendant's failure to include this issue in a posttrial motion and consistent with the holding in *Enoch*, we deem the issue to be properly before us. See also *People v. Cregan*, 2014 IL 113600, ¶¶ 16-18 (2014).

¶ 46   For all of the foregoing reasons, the State's petition for rehearing is denied.